```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   9/02/2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

AIXAMARY RUIZ and RICHARD JOHN,       :

                                        :

                      Plaintiffs,    :         14-CV-5231 (VEC)

                                          :

          -against-          :         MEMORANDUM

                                          :       OPINION & ORDER

CITY OF NEW YORK, DEPUTY INSPECTOR   :

KEVIN A. WILLIAMS, LIEUTENANT WISE,   :

SERGEANT YOUSSEF, LIEUTENANT        :

JIMILIAN, POLICE OFFICER ARMOND, and  :

POLICE OFFICER KEVIN LOPEZ, all being sued:

in their individual and professional capacities,  :

                                          :

                      Defendants.   :

-----------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

       Plaintiffs Aixamary Ruiz ("Ruiz") and Richard John ("John") bring this action against the

City of New York ("City") and Individual Defendants Deputy Inspector Kevin A. Williams

("Williams"), Lieutenant Lavonda Wise ("Wise"), Sergeant Maro Youssef, Lieutenant Sigifried

Jiminian (s/h/a Lieutenant Jimilian), Police Officer Armond, and Police Officer Kevin Lopez

(collectively, "Defendants").  The Plaintiffs and the Individual Defendants are all employees of

the New York City Police Department ("NYPD").  Plaintiffs assert claims for race, gender, and

color discrimination, retaliation and hostile work environment pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); the Civil Rights Act of 1871, 42

U.S.C. § 1983 ("Section 1983"); the Civil Rights Act of 1866, 41 U.S.C. § 1981 ("Section

1981"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL");

and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 *et seq.*

("NYCHRL").

On December 5, 2014, Plaintiffs filed an Amended Complaint.  On January 16, 2015, Defendants submitted a Notice of their intention to rely on their previously filed Motion to Dismiss the original Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  For the reasons stated below, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiffs Ruiz and John are minority members of the NYPD (Hispanic and African-American, respectively) who are assigned to the 28th Precinct in Manhattan.  Am. Compl. ¶¶ 20-24.  At all relevant times, they were romantically involved with each other, a relationship of which all Defendants were aware.  *Id.* ¶ 27.

Beginning as early as February 20, 2012, Plaintiffs were subjected to a variety of official and non-official acts that they assert were discriminatory and retaliatory.  In general terms, Plaintiffs were subjected to a lewd text message sent by Defendant Lopez and to multiple instances of anonymous sexually-explicit graffiti, allegedly as a result of their respective genders or as retaliation for registering complaints about prior discrimination.  *Id.* ¶¶ 49-55.  In addition, Ruiz alleges that she was singled out for discipline because of her minority status and was prohibited from speaking Spanish on the job.  *Id.* ¶¶ 46, 64.  Ruiz further alleges that she was subjected to a variety of adverse actions, including: being forced to work with Defendant Armond, a colleague with whom she did not get along, *id.* ¶ 35; being assigned to a "day tour" that interferes with her childcare schedule, *id.* ¶ 46; being harshly interrogated based on the late submission of a robbery report, *id.* ¶¶ 45-46, receiving a Command Discipline ("CD") for filing

---

[1]      The Memorandum of Law in Support of Defendants' Motion to Dismiss also states that Defendants are proceeding pursuant to Fed. R. Civ. P. 12(b)(2), Defs.' Mem. at 1, but Defendants make no argument whatsoever based on personal jurisdiction.  Accordingly, Defendants' Motion to Dismiss based on lack of personal jurisdiction is denied.

the late report, *id.* ¶ 70; being required to work despite an order from the District Surgeon that she be out on sick leave, *id.* ¶¶ 57-58; being reprimanded in a threatening and hostile manner, given a CD and denied overtime pay by after arriving late to the precinct while three non-minority officers who arrived around the same time were not disciplined, *id.* ¶¶ 60-65; being placed on "foot duty" shortly after John complained about graffiti that mentioned Ruiz's name, *id.* ¶¶ 67, 69; and being consistently ridiculed and shunned such that her co-workers refuse to back her up on duty, *id.* ¶¶ 48, 73-74.   Ruiz alleges that, as a result of the retaliatory discipline she received after complaining about discrimination, her prospects of promotion and transfer have been severely limited.   *Id.* ¶ 72.

Plaintiffs complained to their supervisors and to the NYPD's Office of Equal Employment Opportunity ("OEEO") about each of the alleged instances of discrimination and retaliation.   *Id.* ¶ 68.   In particular, Ruiz filed complaints with her supervisors or the OEEO on October 18, 2012, *id.* ¶ 47; November 29, 2012, *id.* ¶ 55 and November 25, 2012, *id.* ¶¶ 41, 43. John filed complaints with his superiors or the OEEO on or around February 20, 2012, *id.* ¶ 31; November 9, 2012, *id.* ¶ 49; November 29, 2012, *id.* ¶ 50 and April 4, 2013, *id.* ¶ 67.   John's OEEO complaint regarding Lopez's text message was ultimately substantiated by the NYPD on March 8, 2013.   *Id.* ¶ 66.   On or about August 9, 2013, both Plaintiffs complained to the Equal Employment Opportunity Commission, *id.* ¶¶ 16, 18; they each received a Right to Sue letter dated April 14, 2014, *id.* ¶¶ 17, 19.   On July 14, 2014, Plaintiffs filed the Complaint in this action.

## DISCUSSION

### I.    Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), courts "'accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.'"

*Meyer v. JinkoSolar Holdings Co., Ltd.*, 761 F.3d 245, 249 (2d Cir. 2014) (quoting *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (alterations omitted)).  To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).  "At this stage, dismissal is appropriate only where [Plaintiff] can prove no set of facts consistent with the complaint that would entitle [him] to relief."  *Meyer*, 761 F.3d at 249.

## II.    Discrimination Claims

Title VII prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  Under the *McDonnell Douglas* burden-shifting framework, to establish a prima facie case of Title VII employment discrimination "the plaintiff must demonstrate that: (1) she fell within a protected class under [the statute]; (2) she was qualified for the position she held; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Robinson v. Concentra Health Services, Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (citation omitted); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[2]  Employment discrimination claims brought under Title VII, Section 1983, the

---

[2]        Under the *McDonnell Douglas* framework, once the plaintiff establishes a prima facie case, the burden shifts to the defendant to show a legitimate reason for its action.  The burden then shifts back to the plaintiff to show that the defendant's explanation is a pretext for discrimination.  *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011) (citations omitted).

NYSHRL, and the NYCHRL are all treated under the same *McDonnell Douglas* framework.  *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576-77 (S.D.N.Y. 2011) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010); *Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 468 (S.D.N.Y. 2009)).

Because the prima facie case requirement is an evidentiary standard, "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss."  *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).  Nonetheless, "the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim."  *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (citation and quotation omitted).  In *Littlejohn v. City of New York*, the Second Circuit recently clarified that "*Iqbal's* requirement applies to Title VII complaints of employment discrimination, but does not affect the benefit to plaintiffs" of the *McDonnell Douglas* framework.  No. 14-1395-CV, 2015 WL 4604250, at *8 (2d Cir. Aug. 3, 2015):

> The facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation. The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation.

Under the relevant standard, therefore, Plaintiffs' claims will survive to the extent Plaintiffs have plausibly asserted facts supporting an inference of discrimination under the *McDonnell Douglas* framework.

## A.  Plaintiffs' 1981 Race Discrimination Claims Are Encompassed by Section 1983

The Supreme Court has clarified that, with respect to Defendants who are state actors, Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981.  *Jett*

*v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731-34 (1989); *see also Bermudez*, 783 F. Supp. 2d at 576.  Plaintiff's race discrimination claims under Section 1981 are therefore dismissed as against all Defendants.  *See Roddini v. City Univ. of N.Y.*, No. 02 Civ. 4640, 2003 WL 435981(LAP), at *5 (S.D.N.Y. Feb. 21, 2003) (holding that, under *Jett,* individuals sued in their individual capacities who are state actors must be sued under Section 1983 for violations of the rights guaranteed by Section 1981 (citations omitted)).

### B.  Ruiz Has Adequately Pled Title VII, Section 1983 and NYSHRL Race Discrimination

Defendants do not deny that Ruiz belongs to a protected class or that she was qualified for her position as a police officer.  Rather, Defendants argue that Ruiz fails to allege facts that could plausibly establish an "adverse employment action" or give rise to an "inference of discriminatory intent."  Defs.' Mem. at 9-13.

An adverse employment action in the context of the anti-discrimination laws is a "materially adverse change in the terms and conditions of employment."  *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).  The action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (citation omitted); *see also Mathirampuzha*, 548 F.3d at 78 ("Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." (quoting *Sanders*, 361 F.3d at 755)).

Ruiz argues that she was subject to several forms of adverse actions because of her race and gender, including: being disciplined without cause, being prevented from transferring or being promoted, being assigned to a "day tour" that conflicts with her childcare schedule, being

assigned to a "foot post," being assigned to work long hours while she was sick, being yelled at, being required to work with an officer with whom she does not get along, being denied overtime pay, and not receiving "back up" from other officers when she is on duty.  While some of these actions standing alone do not meet the relevant standard, *see, e.g.*, *Jackson v. N.Y. Dep't of Labor*, 709 F. Supp. 2d 218, 228 (S.D.N.Y. 2010) (disciplinary notices alone do not amount to an adverse employment action (citation omitted)); *Barounis v. N.Y.C. Police Dep't*, No. 10 CIV. 2631(SAS), 2012 WL 6194190, at *6 (S.D.N.Y. Dec. 12, 2012) (being yelled at or unfairly criticized does not amount to an adverse employment action), others plausibly state a claim, and as a group they collectively state a claim. *See, e.g.*, *Pimentel v. City of New York*, 74 Fed. App'x 146, 148 (2d Cir. 2003) (denial of a transfer may constitute an adverse employment action if it involves "more cumbersome job responsibilities or lower compensation" (citation omitted)); *Edwards v. Huntington Union Free Sch. Dist.*, 957 F. Supp. 2d 203, 211 (E.D.N.Y. 2013) (reassignment that constitutes a career setback may constitute an adverse employment action (citation omitted)); *Wright v. N.Y.C. Off-Track Betting Corp.*, No. 05 CIV. 9790(WHP), 2008 WL 762196, at *4 (S.D.N.Y. Mar. 24, 2008) ("Comparatively poor assignments can constitute adverse employment actions." (citations omitted)); *Edwards v. Metro–North Commuter R.R. Co.*, No. 04–cv–430(JBA), 2006 WL 2790402, at *5 (D. Conn. Sept. 27, 2006) (actions exposing employee to "potentially unreasonably dangerous working conditions" could constitute adverse employment action (citations omitted)).

Ruiz has pled facts that could plausibly give rise to a minimal inference of discrimination based on her race.  An inference of discrimination may be discerned from a variety of circumstances, including, "the employer's criticism of the plaintiff's performance in ethnically degrading terms," the employer's "invidious comments about others in the employee's protected group," or "the more favorable treatment of employees not in the protected group." *Dellaporte*

*v. City Univ. of N.Y.*, 998 F. Supp. 2d 214, 227 (S.D.N.Y. 2014) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (internal citations omitted)).  Ruiz alleges that Defendant Wise singled her out, reprimanded and punished her for tardiness (including by withholding her overtime pay) while three other non-minority officers who returned to the stationhouse at approximately the same time were not disciplined in any way.  She further alleges that she was prohibited from speaking Spanish or punished for speaking Spanish on the job in a manner than could suggest racial animus.[3]  Although her allegations on this point are thin, the Court cannot, at this stage, weigh Ruiz's evidence in deciding Defendants' Motion to Dismiss.

Ruiz does not, however, allege any connection between her gender and the adverse employment actions she allegedly suffered.  In particular, she does not argue that she was targeted for any adverse employment action because she is a woman, or that Lopez's text message and the vulgar writing on the bathroom walls (her only allegations relating to gender) constituted adverse employment actions.[4]  Indeed, in responding to Defendants' Motion to Dismiss, Plaintiffs' brief focuses solely on Ruiz's allegations of racial discrimination.  Pls.' Opp. at 9-10.  Ruiz's claims for gender discrimination pursuant to Title VII, Section 1983 and the NYSHRL are therefore dismissed.

---

[3]     "[M]any courts, including the Second Circuit, have recognized that Title VII does not expressly identify language as a protected class," but in some circumstances a prohibition on speaking one's native language in the workplace can be an indication of unlawful race or national origin discrimination.  *Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 612 (S.D.N.Y. 2009) (citing cases).

[4]     Ruiz's hostile work environment claims, on the other hand, based on many of those facts, are sufficiently pled.  *See* Section 4(A), *infra*.

### C.  Ruiz Has Adequately Pled NYCHRL Race and Gender Discrimination

In 2005, the New York City Council broadened the protection of the NYCHRL, such that

"'courts must analyze NYCHRL claims separately and independently from any federal and state

law claims.'" *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 411 (2d Cir. 2015) (*per

curiam*) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir.

2013)).  The scope of the NYCHRL is broader than the federal and state anti-discrimination laws

because the NYCHRL does not require a "materially adverse employment action[]." *Mihalik*,

715 F.3d at 114 (citation omitted).  The relevant standard is instead whether a plaintiff was

"treated less well at least in part because of her [membership in a protected class]." *Mihalik*, 715

F.3d at 110 (alteration and internal quotation marks omitted).  NYCHRL claims are construed

"broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably

possible." *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (N.Y. 2011).  Having met the

higher standard in pleading a race-based adverse employment action, Ruiz also meets the more

liberal pleading standard under the NYCHRL with respect to her race discrimination claims.

Ruiz has also pled sufficient facts to show that she was "treated less well" because of her gender:

apart from the text message and sexually-explicit graffiti, Plaintiffs' allegations suggest that Ruiz

may have been disciplined and harassed more severely than John following their reporting of the

same incidents.  Am. Compl. ¶¶ 69, 71-74.

### D.  John Has Not Stated a Claim of Discrimination

In contrast to Ruiz, John does not allege that he suffered any adverse employment action

or that he was "treated less well" because of his race, color or gender.  John did complain that

Lopez's text "would not have been tolerated if [John] and Ruiz were not minorities," Am.

Compl. ¶ 31, but there is no allegation suggesting that Lopez's text was racially motivated or that

it constituted an adverse employment action.  Defendants clearly flagged this shortcoming in

their Motion to Dismiss, and Plaintiffs failed to respond, focusing their entire Opposition argument on Ruiz's discrimination claims.  Pls.' Opp. at 9-10.  Because John has effectively abandoned his race, gender and color discrimination claims, those claims are dismissed.  *See Lipton v. Cnty. of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (Courts "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (citation omitted)).

### III.    Retaliation Claims

"To [allege] a prima facie case of retaliation [under Title VII], a plaintiff must [allege] that '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (*per curiam*) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).  As with discrimination claims, "allegations in [support of a retaliation claim] need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 2015 WL 4604250, at *11.  The same pleading standard applies to retaliation claims brought under Section 1983 and the NYSHRL.  *Bermudez*, 783 F. Supp. 2d at 575; *Conklin v. Cnty. of Suffolk*, 859 F. Supp. 2d 415, 424 (E.D.N.Y. 2012).

A protected activity includes any action that "protests or opposes statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).  "Informal complaints to supervisors, instituting litigation, or filing a formal complaint are protected activities under Title VII." *Giscombe v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014) (citations and internal quotations omitted).  The standard for a "materially adverse action" in the retaliation context is broader than the standard for an "adverse

employment action" in the discrimination context. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). The relevant query is whether the employer's actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citations and internal quotations omitted).

Plaintiffs may establish a causal connection for purposes of a retaliation claim either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (citation omitted).

### A. Ruiz Has Adequately Alleged Title VII, Section 1983 and the NYSHRL Retaliation

Defendants appear to concede that Ruiz engaged in protected activity by, *inter alia*, complaining to her supervisors about Armond's behavior[5] and other allegedly discriminatory treatment, Am. Compl. ¶¶ 41, 68; filing a complaint with the OEEO on October 18, 2012, *id.* ¶ 47; filing this action on July 14, 2014, Dkt. 1, and complaining to a supervisor regarding retaliatory treatment following her complaints, Am. Compl. ¶ 74. Defendants also appear to concede that at least some Defendants were aware that Ruiz had engaged in protected activity.

Defendants argue that Ruiz cannot establish that she suffered any materially adverse action, nor can she establish a "causal connection" between the protected activity and any

---

[5]       Ruiz alleges that, while working on patrol with Armond, Armond became "very confrontational," refused to allow Ruiz to interview a robbery victim in Spanish, and later refused to accompany Ruiz to the hospital to complete the victim interview. *Id.* ¶¶ 36-40. The same day, Ruiz reported the incident to three supervisors, including Defendant Youssef. *Id.* ¶¶ 41, 43. After the incident, Ruiz was subjected to a "hostile" interrogation, given a CD, and permanently assigned to a "day tour" that interferes with her childcare schedule, while Armond was not disciplined. *Id.* ¶¶ 46, 70.

materially adverse action. Defs.' Mem. at 14-19. The Court disagrees. Ruiz's allegations that

she was, *inter alia*, disciplined without cause, assigned to shifts that conflict with her childcare

schedule, required to work on "foot post," and shunned to the point of being denied "back-up" by

her co-workers are sufficient to allege a materially adverse action for her retaliation claims; these

actions "well might have dissuaded a reasonable worker" from complaining about

discrimination. *See, e.g.*, *Burlington N.*, 548 U.S. at 67; *see also id.* at 69 (noting that "[c]ontext

matters" in determining whether an adverse action is material or trivial, such that "[a] schedule

change in an employee's work schedule may make little difference to many workers, but may

matter enormously to a young mother with school-age children."); *Monclova v. City of New

York*, No. 05 Civ. 3164, 2008 WL 822117, at *7 (E.D.N.Y. Mar. 26, 2008) (disciplinary charges

may constitute an adverse action for purposes of establishing a prima facie case of retaliation).

     Furthermore, Ruiz has plausibly pled that the adverse actions she suffered were causally

connected to her engagement in protected activity. For example, the Amended Complaint states

that, after she filed her OEEO complaint on October 18, 2012, Ruiz's co-workers stopped

backing her up, Am. Compl. ¶ 48, and several weeks later, graffiti directed at her and John was

written on the bathroom and locker room walls, *id.*¶ 54. After Ruiz complained about Armond's

treatment, including her refusal to permit Ruiz to interview a crime victim in Spanish and to

accompany Ruiz to the hospital to interview the victim, *id.* ¶¶ 41, 43, Ruiz was assigned to a

shift that interfered with her childcare schedule, *id.* ¶ 46. Ruiz further alleges that, at least part of

the reason she received a CD and was assigned to foot patrol was that 12 days earlier John had

reported sexually-explicit graffiti regarding her and John. *Id.* ¶¶ 67, 69; Pls.' Opp. at 15. Finally

Ruiz alleges that she was subject to retaliatory harassment by co-workers after filing the

Complaint in this case. Am. Compl. ¶¶ 73-75. The context and timing of these incidents

plausibly supports a causal connection between the protected activity and the adverse action. *See*

*Nagle v. Marron*, 663 F.3d 100, 111 (2d Cir. 2011) ("While we have not 'drawn a bright line' defining the maximum time period that can give rise to an inference of causation, six weeks fits comfortably within any line we might draw." (citation omitted)).

### B.  John Has Adequately Alleged Title VII, Section 1983 and NYSHRL Retaliation

As with Ruiz, Defendants do not dispute that John engaged in protected activity, of which at least some Defendants were aware.  Instead, they argue that John fails to allege that he suffered any materially adverse action as a result of engaging in protected activity.  Defs.' Mem. at 15, 17-18.  Although John's allegations are less robust than Ruiz's, he does allege that he was subject to a "retaliatory hostile work environment" as a result of his complaining to his supervisors and the OEEO about Lopez's text message.  Pls.' Opp. at 14 (citing *Thomas v. Istar Financial Inc.*, 438 F. Supp. 2d 348, 365 (S.D.N.Y. 2006)).  The Second Circuit has held that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the [third] prong of the retaliation prima facie case."  *Rivera v. Rochester Genesee regional Transp. Authority*, 743 F.3d 11, 26-27 (2d Cir. 2012) (quoting *Richardson v. N.Y. State Dep't of Corr. Ser.*, 180 F.3d 426, 446 (2d Cir. 1999) (abrogated on other grounds by *Burlington N.*, 548 U.S. 53)).  Whether John can ultimately prove that the vulgar graffiti was "sufficiently severe" to constitute a materially adverse action, he has alleged enough at the pleading stage.

### C.  Both Ruiz and John Have Adequately Alleged Retaliation Under the NYCHRL

The requirements for a retaliation claim under the NYCHRL are substantially the same as under federal and state law.  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Mihalik*, 715 F.3d at 122 (internal citation omitted); *see also* N.Y.C.

Admin. Code § 8–107(7).  For the reasons stated above, Ruiz and John have pled claims for

retaliation under the NYCHRL.

## IV.    Hostile Work Environment Claims

For a hostile work environment claim, a plaintiff must plead that the conduct "(1) is

objectively severe or pervasive — that is, creates an environment that a reasonable person would

find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as

hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected

status]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d

687, 691-92 (2d Cir. 2001) (quotations and internal alterations omitted)).[6]  The same standard is

used for evaluating hostile work environment claims under Section 1983 and the NYSHRL.  *See*

*Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451

(E.D.N.Y. 2011); *Bermudez*, 783 F. Supp. 2d at 578 (S.D.N.Y. 2011).  In evaluating hostile work

environment claims, courts consider "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510

U.S. 17, 23 (1993).  While the Second Circuit has "often noted that even a single episode of

harassment can establish a hostile work environment if the incident is sufficiently 'severe,'"

*Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (citing cases), in most cases, "[t]he

incidents complained of must be more than episodic; they must be sufficiently continuous and

---

[6]       Employers can be liable for a hostile work environment created either by the plaintiff's supervisors or her
non-supervisory co-workers under federal and state law.  "If the harassment is perpetrated by the plaintiff's 'non-
supervisory coworkers, an employer's vicarious liability depends on the plaintiff showing that the employer knew
(or reasonably should have known) about the harassment but failed to take appropriate remedial action.'"
*Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106 (2d Cir. 2015) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d
Cir. 2004)); *see also Totem Taxi, Inc. v. New York State Human Rights Appeal Board*, 65 N.Y.2d 300, 304 (N.Y.
1985) ("[I]n order to hold the employer responsible [under the NYSHRL] the [plaintiff] must demonstrate that the
employer approved of, or acquiesced in the employee's conduct" (citations omitted)).

concerted in order to be deemed pervasive," *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir.

2014) (citation omitted).

While Plaintiffs face a "high hurdle with respect to the level and frequency of offensive

conduct that must be present" to prove their hostile work environment claims, *DelaPaz v. N.Y.C.*

*Police Dep't*, No. 01 CIV. 5416(CBM), 2003 WL 21878780, at *3 (S.D.N.Y. Aug. 8, 2003) "to

avoid dismissal under [Fed. R. Civ. P.] 12(b)(6), a plaintiff need only plead facts sufficient to

support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a

reasonable employee would find the conditions of her employment altered for the worse,'"

*Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).  The

Second Circuit has "repeatedly cautioned against setting the bar too high" in this context.

*Patane*, 508 F.3d at 113 (quotation marks omitted).

### A.  Both Ruiz and John Have Adequately Alleged Hostile Work Environment Claims Under Title VII, Section 1983 and the NYSHRL

Ruiz and John have plausibly alleged that they suffered "harassment . . . of such quality

or quantity that a reasonable employee would find the conditions of her employment altered for

the worse.'"  *Id.*  The question is whether they have sufficiently pled that such conduct is

connected to their membership in a protected class.  Plaintiffs' allegations related to race are

relatively sparse.  Ruiz alleges that both Armond and Wise refused to let her speak Spanish and

that Wise singled her out for discipline while turning a blind eye to similar conduct by her non-

minority colleagues.  John alleges that Lopez's offensive text was seen by others as acceptable

because he and Ruiz are minorities.  Plaintiffs also allege that they were subject to a hostile work

environment as a result of their respective genders.

In terms of factual allegations, Plaintiffs allege that Lopez circulated a text, depicting an

image of Ruiz's face "photoshopped" onto a naked woman's body, to John and others, and then

"approached and threatened" Ruiz.  Am. Compl. ¶¶ 28, 30, 34.  Later, the Plaintiffs were the

subject of multiple instances of sexually-explicit graffiti using their names.  *Id.* ¶¶ 49-50, 54, 67.

This is sufficient to state a hostile work environment claim.  *See, e.g.*, *Howley v. Town of*

*Stratford*, 217 F.3d 141, 156 (2d Cir. 2000) (reversing grant of summary judgment on female

firefighter's hostile work environment claims based on a single instance in which a co-worker

publicly subjected her to gender-based ridicule in such a way as to question her competence and

impair her ability to lead in life-threatening situations).

Defendants argue that because Plaintiffs are "of different races and different genders"

they cannot plausibly complain about the same allegedly offensive conduct.  Defs.' Mem. at 23.

This, however, is not an issue that the Court can resolve at the pleading stage.  "[T]here is no per

se bar to maintaining a claim of sex discrimination where a person of another sex has been

similarly treated."  *Brown v. Henderson*, 257 F.3d 246, 256 (2d Cir. 2001).  For example, "it may

be the case that a co-worker or supervisor treats both men and women badly, but women worse."

*Id.* (citation omitted).   In *Brown,* the Second Circuit further noted:

> [T]here might even be circumstances that are actionable under Title VII when
> both men and women suffer sexually discriminatory harms in the same
> workplace, but for different reasons. This could occur, for example, if an
> employer discriminated against women, but not men, who were overweight,
> *see, e.g.*, *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 454 (D.C. Cir.
> 1976); *Gerdom,* 692 F.2d at 606-08, and against men, but not women, who
> dated overweight people. *See Parr v. Woodmen of the World Life Ins. Co.,* 791
> F.2d 888, 891-92 (11th Cir. 1986) (holding that an employer had discriminated
> against a white employee, based on his race, when it refused to hire him
> because of his interracial marriage, and finding that such discrimination against
> the white employee was consistent with the possibility that the employer also
> discriminated against African-Americans generally).

*Id.* at 254-55 (citation omitted); *see also Holcomb v. Iona College*, 521 F.3d 130, 139 (2d Cir.

2008) ("[W]here an employee is subjected to adverse action because an employer disapproves of

interracial association, the employee suffers discrimination because of the employee's *own*

race.").  Thus, the fact that Ruiz and John were both targeted in Lopez's text message and in the sexually-explicit graffiti, albeit in different ways, does not preclude the viability of both Plaintiffs' hostile work environment claims.  Defendants' Motion to Dismiss such claims is therefore denied.

### B.  Plaintiffs' Title VII Hostile Work Environment Claims Are Not Time-Barred

Defendant argue that any employment discrimination claims brought under Title VII based on the text message incident, which occurred on February 20, 2012, are time-barred.  Title VII claims must be filed with the EEOC or a qualified state or local fair employment practice agency within 300 days of the alleged discriminatory act.  42 U.S.C. § 2000e-5(e)(1).  Plaintiffs filed their Charge of Discrimination with the EEOC on August 9, 2013, Am. Compl. ¶¶ 16, 18; any claims that accrued before October 13, 2012, including any claim based solely on the February 12, 2012 text incident, are time-barred.  Defs.' Mem. at 25.

An exception to this rule is the "continuing-violation doctrine," pursuant to which, "[i]f a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred."  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996) (citation omitted).  In *Nat'l R.R. Passenger Corp. v. Morgan*, the Supreme Court clarified that discrete and easily identifiable acts "such as termination, failure to promote, denial of transfer, or refusal to hire" are only actionable to the extent they occurred during the statutory time period.  536 U.S. 101, 114 (2002).  A hostile work environment claim, in contrast, by its very nature "involves repeated conduct" that "may not be actionable on its own."  *Id.* at 115 (citations omitted).  Therefore, so long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.* at 117.  *But see Bowen-Hooks v. City of New York*, 13

F. Supp. 3d 179, 206 (E.D.N.Y. 2014) (two separate instances of alleged harassment separated by more than three years are not subject to the continuing-violation doctrine).

Lopez's text message incident is only relevant to Plaintiffs' gender discrimination and hostile work environment claims.  The Court has dismissed both Plaintiffs' gender discrimination claims, so it need not determine whether the continuing-violation doctrine applies to those claims.  Based on the continuing-violation doctrine, as elucidated in *Nat'l R.R. Passenger Corp. v. Morgan*, the Court finds that Lopez's text message may be considered for purposes of determining liability relative to Plaintiffs' hostile work environment claims.

### C.  Both Ruiz and John Have Adequately Alleged Hostile Work Environment Claims Under the NYCHRL

The pleading standard for hostile work environment claims under the NYCHRL is more liberal than the federal and state standard, because under the NYCHRL conduct need not qualify as "severe or pervasive" to be actionable.  *Bermudez*, 783 F. Supp. 2d at 579 (citing *Williams v. New York City Housing Authority*, 61 A.D.3d 62, 76-77 (1st Dep't 2009)).  Thus, any conduct, apart from "petty slights and trivial inconveniences," establishing that a plaintiff is treated "less well than other employees" because of his or her protected status is actionable.  *Williams*, 61 A.D.3d at 78.  For the reasons discussed above, Defendants' Motion to Dismiss Plaintiffs' hostile work environment claims under the NYCHRL is denied.[7]

---

[7]    As under federal and state law, to succeed on their NYCHRL claims against the City, Plaintiffs must establish that their supervisors knew or should have known of the actionable conduct and failed to take appropriate steps to stop it.  *See Zakrzewska v. New Sch.*, 598 F. Supp. 2d 426, 434 (S.D.N.Y. 2009)(under the NYCHRL, an employer will be liable for the discriminatory act of a co-workers only if "a managerial or supervisory employee knew of and acquiesced in such conduct or should have known of what was going on an failed to take reasonable preventive measures.").

**V.     Plaintiffs Fail to State a *Monell* Claim Against The City**

Under the Supreme Court's ruling in *Monell v. Dep't of Soc. Servs. of City of New York*, a municipal entity may only be held liable under Section 1983 if the plaintiff demonstrates that the alleged constitutional violation was caused by a municipal "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." 436 U.S. 658, 694 (1978). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). Policy or custom, as used in *Monell*, includes "the decisions of a government's lawmakers, the acts of its policymaking officials," *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011), and "persistent and widespread" practices that have become "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691.

Plaintiffs' only allegations in support of their *Monell* claims are the conclusory statements that Defendants engaged in a "pattern and practice" evidencing discrimination, hostile work environment and retaliation against the Plaintiffs, and that Defendants similarly engaged in a "pattern and practice" of discrimination against other minority officers and women. Am. Compl. ¶¶ 25-26. Plaintiffs do not complain of any formal law, regulation or policy implemented by the City. Nor do they allege that any Defendant made any decision or took any action as a policy maker for the City that resulted in a constitutional violation. *See Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008) ("Policy, in the *Monell* sense, may of course be made by the municipality's legislative body . . . but it also may be made by a municipal official 'possess[ing] final authority to establish municipal policy with respect to the action ordered.'" (citations omitted)); *see also Littlejohn*, 2015 WL 4604250, at *11 (dismissing *Monell* claims

where supervisor who fired plaintiff "was not a final municipal policymaker such that her isolated personnel decision . . . could be said to represent official City policy.").

In their Opposition brief, Plaintiffs merely argue that the alleged misconduct was "repetitive, continuous and systematic" and that it "extend[ed] up the chain of command to Defendant Williams, a Deputy Inspector and Commanding Officer."  Pls.' Opp. at 23.  While a particular custom or usage could become so permanent and well-settled so as to carry the "force of law," Plaintiff's vague and conclusory statement that the misconduct "extend[ed] up the chain of command to Defendant Williams" is simply insufficient to state a plausible *Monell* claim. This is particularly true inasmuch as certain of Plaintiffs' complaints were investigated and acted upon, as evidenced by the fact that Lopez was disciplined following Plaintiffs' complaints regarding his text message and threatening behavior.  Am. Compl. ¶ 34.  Plaintiffs' *Monell* claims are therefore dismissed.

## VI.    Plaintiffs Fail to State a Claim Against Defendant Jiminian

None of Plaintiffs' allegations against the Individual Defendants is particularly detailed,[8] but their allegations against Defendant Jiminian are clearly insufficient to state a claim. Plaintiffs' sole allegation regarding Defendant Jiminian is that Ruiz "was assigned to patrol with Defendant Armond" after having informed Jiminian "that she and Armond did not get along." Am. Compl. ¶ 35.  Based on this allegation, there is no plausible set of facts under which Plaintiffs would be entitled to relief from Jiminian.  *Meyer*, 761 F.3d at 249.  Plaintiffs' claims against Defendant Jiminian are therefore dismissed.

---

[8]      Plaintiffs are reminded that under Section 1983, an individual may only be held liable if that individual is "personally involved in the alleged deprivation." *Back v. Hastings On Hudson Union Free Sch. Dist.,* 365 F.3d 107, 127 (2d Cir. 2004).

**VII.    Plaintiffs' Title VII Claims Against the Individual Defendants are Not Cognizable**

Plaintiffs' Title VII claims against the Individual Defendants are dismissed because "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995)).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  The following claims are DISMISSED: (1) Plaintiffs' race discrimination claim under Section 1981; (2) Ruiz's claims for gender discrimination under Title VII, Section 1983 and NYSHRL; (3) John's claims for race, gender and color discrimination under Title VII, Section 1983, NYSHRL and NYCHRL; (4) Plaintiffs' *Monell* claims against the City; (5) all of Plaintiffs' claims against Defendant Jiminian and (6) Plaintiffs' Title VII claims against the Individual Defendants.  Defendants' Motion to Dismiss other aspects of the Amended Complaint is denied.  The Clerk is respectfully requested to close the open motion at docket entry number 22.

**SO ORDERED.**

**Date:   September 2, 2015**
          **New York, NY**                                    **VALERIE CAPRONI**
                                                              **United States District Judge**

21